1

**Victorino DLG. Torres, Esq.**
**TORRES BROTHERS, LLC.**
2   Attorneys At Law
P.O. Box 501856
3   Bank of Guam Bldg., 3rd Floor
Saipan, MP  96950
4   Tel: 670-233-5504/06

5   **James Livingstone, Esq.**
Attorney At Law
6   38 Old Wood Rd.
North Attleboro, MA 02760
7   Tel:  508-695-1615

8

F I L E D
Clerk
District Court

JUN – 7 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

9            **UNITED STATES DISTRICT COURT**

10                        **FOR THE**

11            **NORTHERN MARIANA ISLANDS**

12                                          CIVIL ACTION NO. CV 05-0026

13   **TOSHIHIRO TAKAHASHI,**          **MOTION IN LIMINE AND**
                                      **INCORPORATED MEMORANDUM**
14            **Plaintiff,**          **OF LAW TO EXCLUDE CERTAIN**
                                      **INFORMATION**
15            **v.**
                                      TRIAL DATE:   June 12, 2006
16   **MAEDA PACIFIC CORPORATION,**   TIME:         9:00 A.M.
                                      JUDGE:        Hon. Alex R. Munson
17            **Defendant.**

18

19         The Plaintiff, Toshihiro Takahashi, moves this Court for an Order *in Limine* excluding

20   any reference to certain information regarding Plaintiff's unrelated medical care and certain

21   unrelated litigation involving the Plaintiff as well as litigation filed against Dr. H. Christine

22   Brown in opening or closing statements as well as during the voir dire and trial.  Specifically,

23   Plaintiff seeks to exclude the fact that he has taken Viagra and that he been involved in certain

24   litigation unrelated to this case as well as to exclude reference to frivolous litigation filed against

25   his expert, Dr. Brown.  These facts are irrelevant to this case, would only be used to attempt to

26   unfairly embarrass the Plaintiff and Dr. Brown, and may mislead the jury.  All such information

27

28

1    should be excluded from voir dire and trial, including opening and closing statements, testimony,

2    and exhibits.

3    Date:    June 7, 2006.

4    James D. Livingstone

5

6    Victorino DLG. Torres
     Torres Brothers, LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS OF AUTHORITY**

2

Plaintiff seeks an order excluding any reference to the fact that the Plaintiff has been

3

treated with Viagra and that he has been involved in certain litigation unrelated to this case as

4

well as any reference to the fact that Dr. Brown has been sued from voir dire and trial, including,

5

opening and closing statements, testimony, and exhibits.

6

7

The Court is required to exclude any information that is irrelevant, Fed.R.Evid. 402, or

8

where the information's "probative value is substantially outweighed by the danger of unfair

9

prejudice, confusion of issues, or misleading the jury or by consideration of undue delay, waste

10

of time, or needless presentation of cumulative evidence," Fed.R.Evid. 403. Both grounds

11

require excluding reference to Viagra and unrelated litigation from this trial as well as any

12

reference to litigation filed against Dr. Brown.

13

14

I.    Plaintiff's Unrelated Medical Treatment Should Be Excluded.

15

Plaintiff has taken Viagra. The medical records that have been identified as exhibits by

16

the parties make reference to this treatment. Defendant's counsel just informed Plaintiff's

17

counsel this week that he plans to introduce such information during the case. This cannot be

18

allowed.

19

20

The fact that Plaintiff has taken Viagra is irrelevant to this dispute. Although, Plaintiff

21

claims damages for injuries that he has suffered, there is no evidence or information that the

22

Viagra relates in any way to the treatment Plaintiff received as a result of the accident, impacted

23

his healing process in any way, or is otherwise relevant to this case. The only possible use of

24

this evidence is to embarrass the Defendant. That's improper.

25

Because the fact that the Plaintiff used Viagra is irrelevant and will be used solely for an

26

improper purpose, it must be excluded. Fed.R.Evid. 402 and 403. Any exhibit that refers to

27

such treatment should be redacted and all other references should be excluded from trial.

28

1

2

II.    Plaintiff's Unrelated Litigation Should Be Excluded.

3

4

Plaintiff is currently engaged in litigation with Keith Ada, one of his former employees

5
and a potential witness that the Plaintiff plans to call at trial.  The dispute centers around Mr.

6
Ada's employment with the Plaintiff and what, if anything, Plaintiff owes him.  A copy of the

7
complaint is attached as Exhibit A to this motion.  None of the allegations in the complaint have

8
been resolved in the case.

9

None of the work at issue in Mr. Ada's case relates to this case in any way.  It is

10
irrelevant.  As with the Viagra evidence, it appears Defendant plans to use this information

11
solely to embarrass the Plaintiff because of the mere and unproven allegations that have been

12

13
made against him.  If Defendant is allowed to put at issue mere and unproven allegations, the

14
Plaintiff will be forced to defend the pending litigation in the Superior Court.  This will not only

15
confuse the jury but it will also be a distraction from the matters actually at issue in this case.

16

In sum, this information is irrelevant and is being used for an improper purpose.  It

17
should be excluded.  Fed.R.Evid. 402 and 403.

18

III.    Resolved Litigation Involving Dr. Brown Should Be Excluded.

19

20
Plaintiff has retained Dr. H. Christine Brown as a medical expert in this case.  At her

21
deposition, Dr. Brown revealed that she has been sued in two to three cases.  Deposition of Dr.

22
H. Christine Brown at 3:9-10, *see,* Exhibit B.  No adverse verdict was ever entered against her

23
and no settlement was ever entered on her behalf.  *Id.* at 3:14-16.  She was dismissed from each

24
lawsuit.  *Id.* at 2:24-3:5.

25

The mere fact that Dr. Brown has been sued is entirely irrelevant to this case.  In fact, the

26

27
probative value is zero while the danger of undue prejudice is certain.  Introducing evidence or

28
asking questions regarding lawsuits against Dr. Brown may confuse the jury, as it may suggest

1   she has done something improper when she has not.  As result, this information must be

2   excluded.  Fed.R.Evid. 402 and 403.

3

4                                  **CONCLUSION**

5

6       Any reference to the fact that Plaintiff has been treated with Viagra; to Plaintiff's

7   litigation with Mr. Ada including the basis of the litigation; and cases filed against Dr. Brown

8   should be excluded from the trial, including voir dire, opening and closing statements, testimony,

9   or exhibits.  All this information is irrelevant to the underlying action and is unfairly prejudicial

10  or may be confusing the jury.

11  Date:    June 7, 2006.

12                                  James Livingstone

13

14                                  Victorino DLG. Torres
15                                  Torres Brothers, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2 | Joseph A. Arriola
| Attorney at Law
| 2nd Floor Oceanside Plaza, Suite 305
3 | Beach Road, Garapan
| P.O. Box 505080 CK
4 | Saipan, MP 96950
| Tel. (670) 234-5501
| Fax: (670) 234-5503
5
6 | Attorney for Plaintiff
7
8

IN THE SUPERIOR COURT
FOR THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

9 | KEITH W. ADA dba ADA'S
| CONSULTING SERVICES,

CIVIL ACTION NO. 06- 0038C

10 |                     Plaintiff,

11 |     vs.

12 | MARIANAS SUNRISE ENT., INC. dba
| NEO REMINGTON, and TOSHIHIRO
13 | TAKAHASHI, Personally and As Officer
| Of Marianas Sunrise Ent., Inc.,

**COMPLAINT**

14

15 |                     Defendants.

16      Plaintiff, Keith W. Ada dba Ada's Consulting Services (hereinafter referred to as "Ada"), by

17 and through his counsel, Joseph Aldan Arriola, Esq., bring this action for judgment against the

18 Defendants, for amounts owed on the use of construction equipment provided by Plaintiff as well as

19 the personal services rendered by Plaintiff to Defendants. Plaintiff further seeks judgment against

20 Defendants for damages caused to Plaintiff's character. In support of his complaint, Plaintiff allege

21 as follows:

22

23

24                              **JURISDICTION**

25      1.  Jurisdiction is vested in this court pursuant to 1 CMC section 3202.

26

27                                **PARTIES**

28      2.  The Plaintiff is a U.S. citizen and a resident Saipan, Commonwealth of the Northern

Mariana Islands. Plaintiff is engaged in a sole proprietorship consulting business.



EXHIBIT

A

3.  The Defendant company is a corporation organized under the laws of the Commonwealth of the Northern Mariana Islands.

4.  Defendant Takahashi is a citizen of Japan and residing and doing business in the Commonwealth of the Northern Mariana Islands.

# AVERMENTS

*Personal and Equipment Services*

5.  Plaintiff hereby incorporates paragraphs 1 through 4 above as if fully stated herein.

6.  Between the periods December 2004 and June 2005, Defendant was engaged in the construction of a Japanese temple at the Banzai Cliff. Between said period of time, Plaintiff provided consultation services and oversaw the project until its completion. As per the parties' agreement, Defendant was to compensate Plaintiff in the sum of $10,000.00. Despite repeated demands by Plaintiff, however, Defendant has failed and continues to fail to pay said amount due and owing to Plaintiff.

7.  Between the periods February 2005 and June 2005, Plaintiff provided to Defendant his 1992 4x4 Toyota pick-up truck as part of the equipment to be used for the construction of said temple. As agreed between the parties, Defendant promised to pay for the necessary costs of repair and maintenance of Plaintiff's vehicle during and after the completion of said construction project. As a result of the use of Plaintiff's vehicle, Plaintiff has incurred costs for said repairs and maintenance in the sum of $16,525.00. Plaintiff continued to provide to Defendant the use of his truck over a period of time based on promises made by Defendant to pay said costs.

8.  Despite repeated demands to be compensated for costs incurred to his truck, Defendant has failed and continues to fail to pay to Plaintiff the above-mentioned amount.

9.  Between the periods February 2005 to September 2005, Plaintiff provided personal services to Defendant by assisting them in the research of and documentation of certain information relative to and in connection with a pending action initiated by Atom Action against Defendant. Plaintiff incurred fees in the amount of $1,500.00, of which Defendant promised to compensate to Plaintiff.

1  However, Defendant has failed and continues to fail to pay to Plaintiff said amount that is due and owing.

2        10.  Between the periods July 2005 and September 2005, Plaintiff provided personal service

3  to Defendant by assisting them in a labor case matter filed by Eden Quizon against Defendant.

4  Plaintiff incurred fees in the amount of $500.00, of which Defendant promised to compensate to

5  Plaintiff. Once again, Defendant has failed and continues to fail to pay to Plaintiff said amount that

6  is due and owing to Plaintiff.

7        11.  On or about September 16, 2005, Plaintiff assisted Defendant in promoting and attracting

8  customers to Defendant's Neo Remington club by coordinating with and securing sponsorship from

9  Pacific Trading Co., Shell gas company, and Frozen Nipple. The service fees incurred by Plaintiff for

10 organizing and arranging the promo night for the club was $500.00. Again, Defendant has failed and

11 continues to fail to pay to Plaintiff said amount that is due and owing to Plaintiff.

12       12.  Defendant benefitted substantially from the services provided Plaintiff in the form of

13 consulting and physical services, as well as the use of said vehicle.

14       13.  Despite the services provided by Plaintiff, Defendant has failed to make any payments to

15 Plaintiff for said services.

16       14.  Based on the calculated billing records, the total outstanding amount owed by Defendant

17 to Plaintiff is **$29,025.00.**

18       15.  Plaintiff gave written notice to the Defendant specifying the amounts owed for said

19 services provided by Plaintiff. Defendant failed to respond.

20

21 *Libel/Slander*

22       16.  Plaintiff hereby incorporates paragraphs 1 through 15 above as if fully stated herein.

23       17.  Sometime in the latter part of the year 2005, Defendant published in the Marianas Variety,

24 a newspaper of wide circulation, a Public Announcement informing the general public that Plaintiff

25 "is no longer an employee" of Defendant, and that any transaction made by Plaintiff will not be

26 honored by Defendant.

27       18.  Plaintiff was not and never was an employee of Defendant. Plaintiff provided services

28 to Defendant as an independent contractor.

3

19.    Defendant maliciously communicated to the general public false and defamatory statements by placing said public announcement as if Plaintiff was a terminated employee who was not trustworthy. The defamatory matter was understood by those persons to have such meaning.

20.    The defamatory matter was calculated to cause, and did cause, great injury to Plaintiff's reputation of honesty, uprightness of character, and truthfulness.

21.    Plaintiff is entitled to exemplary damages as a result of Defendants' defamatory statements.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff request judgment against the Defendant:

1. For the amounts now due and owing the Plaintiff, an outstanding balance of $29,025.00, plus interests;

2. For punitive damages;

3. For reasonable attorney's fees and Costs of suit; and

4. For such other and further relief as the Court may deem proper.

DATED this 1st day of February, 2006.

Respectfully submitted,

JOSEPH A. ARRIOLA (F0216)
Attorney for Plaintiff

**VERIFICATION**

I, KEITH W. ADA, under penalty of perjury declare that: (1) I have read the foregoing Complaint and understand the contents thereof; (2) I hereby verify that the contents are true and correct; and (3) I have affixed my signature below on the ___ day of February, 2006, on Saipan, Commonwealth of the Northern Mariana Islands.

KEITH W. ADA
Plaintiff

4

# IN THE UNITED STATES DISTRICT COURT
## OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

TOSHIHIRO TAKAHASHI,           ]     CIVIL ACTION NO.: CV 05-0026
                                            ]
                 Plaintiff,       ]
                                            ]
               vs.              ]
                                          ]
MAEDA PACIFIC CORPORATION,   ]
                                          ]
               Defendant.   ]

## DEPOSITION

### OF

### DR. CHRISTINE BROWN

### MAY 24, 2006

**TRANSCRIBED BY:**
*LAWYERS' SERVICES*
*3RD Flr., Nauru Building*
*P.O. Box 501902*
*Saipan, MP 96950*
*Tel.: (670) 2 34-COPY/235-LINK*
*Fax: (670) 234-2679/Fax: (670) 234-0436*
*Email: mdcalvo@hotmail.com*


EXHIBIT
B

1    Q:   How about here in the Commonwealth, have you been

2          deposed here?

3    A:   Never.

4    Q:   Okay.  When was the last time you had your deposition

5          taken?

6    A:   I think about four or five years ago.

7    Q:   And where was that, please?

8    A:   In Orlando, Florida.

9    Q:   And what was the nature of your deposition/testimony on

10         that case?  Let me rephrase that, why were you deposed?

11   A:   Okay, it was a case which I had been one of many

12         doctors in care of a patient and they were --- I'm not

13         sure if they were really out to sue or amongst them or

14         if they were wanting more testimony on the part that

15         they were suing.

16   Q:   What were you, a defendant in that lawsuit?

17   A:   Initially, defendant.

18   Q:   Okay.  Have you --- what was the other time or the

19         several occasions when you were deposed, just give me a

20         brief summary if you would, please?

21   A:   There's one or two other cases where I was defendant.

22   Q:   Okay, and those were also in Florida?

23   A:   Yes.

24   Q:   And without meaning to be intrusive, what was the

2

1      disposition of those cases in which you were a

2      defendant, please?

3  A:  They removed me from the ---

4  Q:  [INAUDIBLE].

5  A:  --- no, from the lawsuit.

6  Q:  Okay.  And you were a defendant ---

7  A:  One of them was actually, the patient [INAUDIBLE]

8      disappeared and they just dropped it.

9  Q:  Okay, you've been a defendant in how many lawsuits?

10 A:  Two or three.

11 Q:  Okay.  Have you ever had an adverse verdict that was

12     entered against you?

13 A:  No.

14 Q:  And has there ever been a settlement entered on your

15     behalf that you are aware of?

16 A:  No.

17 Q:  Have you ever testified at trial?

18 A:  I testified at a --- not a malpractice trial, but

19     [INAUDIBLE].

20 Q:  Okay, what kind of a trial was it?

21 A:  I had a patient who had an injury that was supposedly

22     caused by her employer, and --- so, it was a — they

23     were suing the employer and I testified on her behalf.

24 Q:  Were you a treating physician in that case?

3

1    A:    I was.

2    Q:    All right.  And where was that case with?

3    A:    Louville, Florida [INAUDIBLE].

4    Q:    Have you ever testified in a court proceeding here in

5          the Commonwealth?

6    A:    No, I have not.

7    Q:    Have you ever been qualified as an expert by any court?

8    A:    No, I have not.

9    Q:    Base on your education, training and experience, do you

10         consider yourself qualified to testify as an expert

11         regarding the nature and extent of injury to Mr.

12         Takahashi's finger in this case?

13   A:    I do.

14   Q:    And what do you feel gives you the qualifications to

15         express an expert opinion in this matter, please?

16   A:    Okay, as well as I went to medical school ---

17   Q:    Okay.

18   A:    --- and I did a family practice residency, which we had

19         exposures to basically all different types of medical

20         sub-specialties; including neurology and I actually

21         spent a couple weeks working with a hand surgeon as

22         well.

23   Q:    And when would that have been?

24   A:    In '91, '92.

4